IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


MICHELLE RASBERRY, individually
and on Behalf of Others Similarly Situated;
KUMESHA WARD; JACOB CAIN;
and JOHNNY HAYNES                                                                    PLAINTIFFS

V.                              CASE NO. 1:16-CV-1074

COLUMBIA COUNTY, ARKANSAS                                                      DEFENDANT


**ORDER**

Before the Court is Defendant's Motion for Partial Summary Judgment. ECF No. 46. Plaintiffs have filed a response. ECF No. 50. The Court finds this matter ripe for consideration.

**BACKGROUND**

Plaintiff Michelle Rasberry filed her Complaint on August 4, 2016. ECF No. 1. Plaintiff Rasberry sought relief pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. §§ 11-4-201, *et seq*. ECF No. 1, ¶ 1. Plaintiff Rasberry claimed that Defendant failed to pay her, and others similarly situated, overtime compensation for all hours worked in excess of 171 hours in a twenty-eight consecutive day work period. ECF No. 1, ¶ 1. Specifically, Plaintiff Rasberry alleged that Defendant had "misclassified [Plaintiff Rasberry and all those similarly situated] as exempt from the overtime requirements of the FLSA . . . and the AMWA[.]" ECF No. 1, ¶ 9. Plaintiff Rasberry claimed that she was a salaried employee employed by Defendant and "was routinely required to work off-the-clock in excess of 171 hours in a 28-day work period and was not allowed to report all hours worked, including overtime." ECF No. 1, ¶¶ 15, 18. The Court conditionally certified a

FLSA collective action on January 31, 2017. ECF No. 25. Upon completion of the FLSA opt-in period, six individuals, including Plaintiff Rasberry, had consented to be part of the FLSA collective action. ECF Nos. 11, 12, 27, 28, 29. On July 31, 2017, the Court denied Plaintiff Rasberry's motion for class certification pursuant to Federal Rule of Civil Procedure 23. ECF No. 35.

On March 7, 2018, Plaintiff Rasberry was given leave to file an amended complaint adding individual AMWA claims for Plaintiffs Kumesha Ward, Jacob Cain, and Johnny Haynes. On March 8, 2018, Plaintiffs filed their First Amended and Substituted Complaint—Collective Action (hereinafter "Amended Complaint"). ECF No. 45. In the Amended Complaint, Plaintiff Rasberry again asserts individual and collective FLSA claims, and all Plaintiffs assert individual AMWA claims. In regard to Plaintiff Rasberry's individual and collective FLSA claims, Plaintiffs state that Defendant misclassified Rasberry and those similarly situated as exempt from FLSA overtime provisions and failed to pay Rasberry and those similarly situated for all hours worked, including overtime. ECF No. 45, ¶¶ 48, 59, 60. In regard to Plaintiffs' individual AMWA claims, they state that "[d]espite the entitlement of Plaintiffs to minimum wage and overtime payments under the AMWA, Defendant failed to pay Plaintiffs for all hours worked including overtime. . . . Defendant willfully failed to pay overtime wages to Plaintiffs[.]" ECF No. 45, ¶¶ 53, 54.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide that when a party moves for summary judgment "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Nat'l. Bank of Comm. of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 610 (8th Cir. 1999). The non-moving party "must come forward with sufficient evidence

to support their claims and cannot stand on their complaint and unfounded speculation." *Id.* (internal citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

In the instant motion, Defendant asserts that it is entitled to summary judgment concerning "any and all claims brought by Separate Plaintiff Kumesha Ward[.]" ECF No. 46, ¶ 2. Defendant asserts that Plaintiff Ward's claims (1) fail as a matter of law and (2) are barred by the applicable statutes of limitation. The Court will address each of these assertions in turn.

### I. Defendant's Assertion That Plaintiff Ward's Claims Fail as a Matter of Law

Defendant states that, like the other plaintiffs in this action, Plaintiff Ward was a salaried employee. ECF No. 47, pp. 1-2. However, Defendant claims that, unlike the other plaintiffs, Plaintiff Ward was a part-time employee. ECF No. 47, p. 2. Defendant further asserts that when deposed, Plaintiff Ward stated that she worked approximately thirty-eight to forty hours every two weeks. ECF No. 47, p. 2. Defendant states that although Plaintiff Ward:

> testified that her time sheets were inaccurate, she could present no documentary proof and had no recollection of what hours she actually worked during her employment with Columbia County, except that she testified repeatedly that she did not work as much as the full-time employees.

ECF No. 47, p. 2. Defendant asserts that, accordingly, Plaintiff Ward would have been "nearly 100 hours short of overtime eligibility." ECF No. 47, p. 4. Based on this testimony, Defendant claims that Plaintiff Ward's FLSA claims fail as a matter of law.

Defendant further states that during her deposition, Plaintiff Ward testified that she was paid an annual salary of $13,685.88, with a bi-weekly paycheck of $526.38. ECF No. 47, p. 2. Accordingly, Defendant argues that Plaintiff Ward's AMWA claims fail "because a biweekly paycheck of $526.38 for approximately 38-40 of work yields an effective hourly rate of $13-$14 per hour, nearly double the minimum wage." ECF No. 47, p. 3. Thus, Defendant argues that no reasonable juror could conclude that Plaintiff Ward was denied overtime compensation or paid less than minimum wage.

In response, Plaintiff Ward concedes that she "never worked more than 171 hours in a 28-day period and thus is not entitled to overtime."[1] ECF No. 50, p. 3. However, Plaintiff Ward argues that a genuine issue of material fact exists as to whether she received a minimum wage and states that "her claims arise exclusively under the AMWA." ECF No. 50, p. 4. In regard to this issue, Plaintiff Ward argues:

> During her employment with Defendant, Ward was typically scheduled to work five or six 12-hour shifts every two weeks. This amounts to 60 to 72 hours per biweekly period. However, Ward regularly worked more than her scheduled shifts, as she was required to arrive early and stay late on most days. This additional, undocumented work could easily result in several hours of extra work each shift. However, even assuming Ward only ever worked one additional hour per shift, she still did not receive a minimum wage. If Ward worked one additional hour per shift, then she worked roughly 65 to 78 hours per biweekly period. Thus, her biweekly salary of $526.38 becomes an hourly wage of $6.74 to $8.09. Clearly, there were at least some weeks in which Plaintiff was not paid a minimum wage of $7.25, which is enough to defeat Defendant's Motion. How many additional hours Ward worked, and how much she is owed, is a fact question still to be determined at trial.

ECF No. 50, p. 4.

---

[1] Plaintiff Ward makes this concession notwithstanding the facts that she opted-in to the conditionally certified FLSA collective action and signed an affidavit in which she did "swear, affirm, and attest" that she "was regularly required by Defendant to work in excess of 171 hours in a 28-day period work period." ECF No. 14-8. In light of this concession, the Court will only discuss Plaintiff Ward's minimum wage violation claims.

Plaintiff Ward's position rests on the contention that her timesheets are inaccurate. The record contains eleven timesheets covering two-week periods from late June 2013 through mid-December 2013. *See* ECF No. 48-1, pp. 39-49. Each of these timesheets reflects that Plaintiff Ward worked thirty-nine-and-a-half hours every two weeks, consisting of three twelve-hour shifts and one three-and-a-half hour shift.[2] Each of these timesheets bears Plaintiff Ward's signature above her name.[3] ECF No. 48-1, p. 9. Likewise, each timesheet is signed and certified as being accurate by Sheriff Mike Loe. However, as previously noted, Plaintiff Ward alleges that these timesheets contain inaccuracies and fail to include certain hours she worked. That being said, Plaintiff Ward readily admits she has no documentary evidence that contradicts the timesheets or supports her contentions. ECF No. 48-1, p. 19 (Q: . . . I'm trying to figure out how much you worked. You don't have any written records, you didn't keep a diary or anything like that, did you? A: No, sir, I did not.); ECF No. 48-1, p. 19 (Q: Do you know of any other written records that would document the amount of time that you worked in 2013, other than the time-sheets that were submitted? A: No sir.).

Upon careful consideration, the Court finds that no genuine issues of material fact remain. To begin, the Court notes that Plaintiff Ward correctly states that she at one point testified that she worked "five or six" twelve-hour shifts every two weeks. ECF No. 48-1, p. 8 (Q: So you worked 12-hour shifts. How many 12-hour shifts would you work, say, every two weeks? A: About, about five or six.). However, she does not account for or even address the fact that shortly thereafter, she

---

[2] If these timesheets are correct—which Plaintiff Ward asserts they are not—when read in light of Plaintiff Ward's bi-weekly salary of $526.38, Plaintiff Ward's hourly pay-rate would be $13.32 per hour.
[3] Plaintiff Ward testified that she signed these allegedly inaccurate timesheets because the jail administrator "told us to only write down that and that she was going to take care of the rest; she was going to pay us for comp [time]." ECF No. 48-1, p. 10. Accordingly, Plaintiff Ward would have a jury believe that she signed at least eleven consecutive timesheets that were inaccurate.

also testified that she was unsure how many twelve-hour shifts she worked every two weeks. ECF No. 48-1, p. 14 (Q: . . . How many 12-hour shifts did you work in every two-week period? A: Well, actually, that, I'm really not for sure, because, you know, I did come in for other, they who called in, but like I said, I was required to write down those twelve hours.). Likewise, Plaintiff Ward fails to address her testimony in which she explicitly states that she worked approximately thirty-eight to forty hours every two weeks. ECF No. 48-1, p. 16 (Q: Did you work approximately 38 to 40 hours every two weeks? A: Every two weeks, yeah.). If Plaintiff Ward worked five or six twelve-hour shifts every two weeks, that would be between sixty and seventy-two hours over the course of two weeks—not thirty-eight to forty hours as Plaintiff Ward testified. Furthermore, Plaintiff Ward's testimony that she worked approximately thirty-eight to forty hours every two weeks is precisely what is reflected by her signed timesheets, which note that she worked thirty-nine-and-a-half hours every two weeks. Finally, as noted above, Plaintiff Ward has no written record that would support her claim that she worked five or six twelve-hour shifts every two weeks. Simply put—other than Plaintiff Ward's self-contradicted testimony—there is no evidence to support a finding that she worked five or six twelve-hour shifts over the course of every two weeks.

Furthermore, although Plaintiff Ward testified that she was called in "quite a bit" to cover shifts for co-workers and was not allowed to record that time, she was unable to state how often she was asked to do so and did not offer any specific instances in which she was called in. ECF No. 48-1, p. 26 (Q: Yeah, so how often did it happen where you had to come in to cover somebody else's shift? A: It happened quite a bit. Q: Once a month, once every two months? A: You know, you just really, just didn't really know, how people take off. No, sir, I'm not really sure.). Likewise, Plaintiff Ward has not provided the Court with any records reflecting the frequency that she was

asked to cover shifts and her testimony makes clear no such records exist. ECF No. 48-1, p. 19. On this issue there is simply a complete lack of evidentiary support aside from Plaintiff Ward's bare allegations. Accordingly, a jury would be left to speculate, with no guidance, as to how often Plaintiff Ward allegedly covered shifts for co-workers.

Plaintiff Ward also alleges that she never worked anything less than a twelve-hour shift, and testified that the timesheet notation that she worked three-and-a-half hours should have reflected that she worked twelve hours: "that should have been the 'twelve,' not three-and-a-half hours." ECF No. 48-1, p. 13; ECF No. 48-1, p. 33. However, the Court again notes that Plaintiff Ward has produced no documentary evidence to support her claim that she actually worked twelve hours as opposed to three-and-a-half. Regardless, even if Plaintiff Ward provided evidence to support this assertion and a jury were to find this statement credible and, therefore, that Plaintiff Ward actually worked twelve hours each time her timesheet recorded that she worked three-and-a-half hours, that would result in Plaintiff Ward working forty-eight hours every two weeks. This would yield an effective hourly rate-of-pay of $10.96[4]—well above the minimum wage of $7.25 per hour cited by Plaintiff Ward.

Plaintiff Ward likewise asserts that she generally arrived at work thirty-minutes before her actual shift started because of "meetings and the things that we have got to go over," but was unable to record that time.[5] ECF No. 48-1, p. 13. She also states that she stayed after her shift on

---

[4] This figure comes from four, twelve-hour shifts, which would result in forty-eight hours worked over a two-week period. $526.38 divided by forty-eight hours comes to $10.96 per hour.

[5] In her response, Plaintiff Ward claims that she regularly came to work thirty or forty-five minutes early. However, in her deposition she only stated that she came in thirty minutes early. There is no indication that she ever came in forty-five minutes early. Although defense counsel at one point asked her if she "worked an extra thirty or forty-five minutes a shift" (ECF No. 48-1, p. 23) to which she responded, "it's more than that," there is no indication that Plaintiff Ward ever arrived more than thirty minutes early.

occasion,[6] but it is unclear from her testimony as to how often she stayed late. ECF No. 48-1, p. 16 (Q: Do you remember ever staying late? A: Yes, sir. Because we, you know, couldn't be relieved until the other person came in to relieve us, so, yes, sir. Q: And, but those people would be there thirty minutes early, just like you. Right? A: Yes, sir. Sometime. But, you know, sometime, they, you know, had things come up, you know, or whatever, so, you know.). Once again, the Court notes that Plaintiff Ward submits no evidence other than her testimony to support these claims. Regardless, even if there was evidence to support these claims and a jury found they had merit and determined that Plaintiff Ward worked even a whole extra hour each day, there would be no minimum wage violations.[7]

Accordingly, viewing the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to Plaintiff Ward, the Court concludes that she has failed to provide sufficient evidence to support her claims. The documentary evidence in this case directly contradicts Plaintiff Ward's claims and her deposition testimony is contradictory and often vague. Upon consideration, no reasonable jury could return a verdict in Plaintiff Ward's favor. Therefore, the Court finds that no genuine issues of material fact remain and, thus, summary judgment as to Plaintiff Ward's claims is warranted.

---

[6] Although Plaintiff Ward asserts in her response that she stayed late "most days," there is no record support for such a statement.

[7] The only documentary evidence—the timesheets—shows that at most Plaintiff Ward worked four shifts per two-week period. If a jury were to find that Plaintiff Ward worked an additional four hours on top of the time recorded on her timesheet—thirty-nine-and-a-half hours—that would yield an hourly rate-of-pay of $12.10 ($526.38/43.5 hours). Likewise, even if there was evidence to support Plaintiff Ward's contention that the three-and-a-half hour shifts on her timesheet should have been twelve-hour shifts and four hours were also added, that would yield an hourly rate-of-pay of $10.12 ($526.38/52 hours).

## II. Defendant's Assertion That Plaintiff Ward's Claims are Barred by the Statutes of Limitation

In light of the Court's finding that Plaintiff Ward's claims fail as a matter of law, the Court need not discuss the issue of whether those claims would be time-barred.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant's Motion for Partial Summary Judgment (ECF No. 46) should be and hereby is **GRANTED**. Accordingly, Plaintiff Kumesha Ward's claims are hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**, this 11th day of April, 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge